A  UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CARLETON LESLIE HARRIS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KILOLO KIJAKAZI, Acting Commissioner )<br>of the Social Security Administration, )<br>)<br>Defendant. ) | Cause No. 1:21CV418-PPS/SLC |

## OPINION AND ORDER

In July of 2019, Carleton Leslie Harris applied to the Social Security

Administration for a period of disability and disability insurance benefits, claiming that

he was unable to work as of September 18, 2013, some years before.  [AR 15.][1]  His

application was denied in the written decision of an Administrative Law Judge, entered

after a hearing at which Harris appeared and testified.  [AR 11, 38.]  The ALJ found that

Harris has the severe impairments of low back pain with L5-S1 lumbar

stenosis/spondylosis/right-sided radiculopathy, and mild to moderate obesity.  [AR

18.]  But the ALJ concluded that those impairments do not conclusively establish

disability by meeting or medically equaling the severity of any listed impairments in 20

CFR Part 404, Subpart P, Appendix 1.  [AR 20-21.]  Based on the ALJ's findings as to

Harris's residual functional capacity as well as his age (then 52), education and work

---

[1] The administrative record [AR] is found in the court record at docket entry 11, and consists of
681 pages.  I will cite to its pages according to the Social Security Administration's Bates stamp numbers
rather than the court's Electronic Case Filing page number.

experience, the ALJ concluded that Harris can perform "light work" jobs that exist in significant numbers in the national economy, and that Harris is not disabled. [AR 28-29.]

Harris asks me to reverse the ALJ's decision or remand the case for further administrative proceedings. My role is not to determine from scratch whether Harris is disabled and entitled to benefits. Instead, my review of the ALJ's findings is deferential, to determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue,* 617 F.3d 923,926 (7th Cir. 2010); *Overman v. Astrue,* 546 F.3d 456, 462 (7th Cir. 2008). The role of the courts is "extremely limited," and I am "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). In other words, I can't reweigh the evidence or substitute my judgment for that of the ALJ. *Minnick v. Colvin,* 775 F.3d 929, 935 (7th Cir. 2015). But these standards do not mean that I "will simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000). Although I cannot reweigh the evidence found in the administrative record, reversal is required where the ALJ failed to build an "accurate and logical bridge" between the evidence and his conclusions. *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); *Beardsley v. Colvin,* 758 F.3d 834, 837 (7th Cir. 2014).

## ALJ's Credibility Analysis

Harris first argues that the ALJ erred in analyzing the credibility of Harris's claims of subjective symptoms.  [DE 17 at 9.]  By definition, the ALJ determined that Harris's severe impairments "significantly limit [his] ability to perform basic work activities."  [AR 18.]  In further considering Harris's reported symptoms, the ALJ explained the process to be followed:  "the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment….that could reasonably be expected to produce the claimant's pain or other symptoms."  [AR 21.]   Next the ALJ "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities."  [*Id.*]

When doing that, where the claimant's statements are "not substantiated by objective medical evidence," then the ALJ "must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." [*Id.*]  This explanation is consistent with the governing regulations, found at C.F.R. §404.1529. *See also Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022).  "An ALJ need not discuss every detail in the record as it relates to every factor."  *Grotts*, 27 F.4th at 1278. "As long as an ALJ gives specific reasons supported by the record we will not overturn a credibility determination unless it is patently wrong."  *Id.*, citing *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021).

The ALJ's decision contains seven single-spaced pages in which the ALJ reviews the hearing testimony, Harris's daily activities and other evidence of limitations, as well as the medical evidence including Harris's reports of symptoms and the results of exams conducted for purposes of the disability determination. [AR 21-28.] In the course of this discussion, the ALJ expresses this conclusion about Harris's testimony: "for the reasons explained in this decision, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the frequency and severity reflected within the medical evidence and other evidence in the record." [AR 23.] This language is the sort of boilerplate seen in many an ALJ's disability decision, and it reflects the analytical method laid out earlier in the ALJ's opinion. The proof is in the pudding, though, and the ALJ's analysis is rigorous and detailed.

What in particular is the error Harris asserts? He cites the teaching of the Seventh Circuit that "the ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). [DE 17 at 11.] Of course this principle does not forbid the ALJ's quite necessary consideration of objective medical evidence relevant or contrary to a claimant's testimony. "In making a credibility determination, an ALJ should consider elements such as objective medical evidence of the claimant's impairments...and treatment (including medication). ...The regulations on point also

contemplate than an ALJ will consider a clamant's treatment history." *Deborah M.*, 994 F.3d at 789-90 (internal citations omitted).

Here the ALJ's analysis does not at all depend on the absence of objective medical evidence supporting his claims. To the contrary, she carefully and at considerable length set out the history of Harris' treatment for back pain. She considered "longstanding reports" of back stability and improvement with conservative treatment. [AR 23.] She noted his temporary work as a personal trainer. [AR 23.] She reviewed medical treatment for low back complaints in 2013, noting that Harris's condition improved with steroid injections, medication and physical therapy, to the point that he was able to return to work until the injury incident that provides Harris's claimed date of disability. [AR 23.] She considered Harris's own reports of the length of time he can stand and sit, as well as his regular activities including grocery shopping, laundry, and physical therapy exercises. [AR 22] She considered the fact that Harris denies the need for a cane or walker. [AR 21, 27.]

She considered Harris's course of treatment in 2014 based on a worker's comp request, including Harris's reports of "a capacity to stand 30 minutes, walk[] 30-40 minutes and sit for about 20 minutes before onset of buttock/posterior pain." [AR 24.] At that time, exam indicated full lower extremity muscle strength, some reduced lumbar and bending range of motion, and that Harris "was non-tender throughout the lumbar/sacrum region while standing." [AR 24.] The "clinical impression" was

"persistent axial/back pain appearing discogenic in nature without radicular signs, mimimal radicular symptoms and minimal S1 radiculitis on the right with the claimant's report that strength and condition were gradually improving."  [AR 25.]  The ALJ observed that Harris's "symptoms were noted overall as not severe and primarily axial in nature," and that "further pain management was not indicated" beyond occasional Tramadol or Flexeril.  [AR 25.]  The treating doctor, a specialist in physical medicine, rehabilitation and pain management, indicated that Harris should find a job that allowed him to alternate sitting and standing.  [AR 25.]

The ALJ reviewed Harris's clinical exams from  2014 through 2018, concluding that "the clamant's back remained stable with reports that while stiff at times it was without radicular symptoms and did not preclude him from doing aerobic/weight training five to six days a week."  [AR 25.]  Her summary included characterization of clinical findings over the years, and a course of physical therapy from February to May 2019.  [AR 25.]  The ALJ cited a Progress Note dated May 6 in which Harris was rated as having a moderate limitation in running, only a mild limitation in walking, and no limitation in sitting up and down or bending.  [AR 25, 594.]

Next the ALJ set out in some detail the results of an October 2019 physical consultative exam, and offered an explanation for her rejection of its conclusion that Harris was unable to stand or walk at least two hours within an 8-hour workday.  [AR 25-26.]  She reviewed Harris's exams and medical reports from December 2019 through

November 2020, noting he had a "stable back with stiffness at times and denials of radicular symptoms," and November 2020 lumbar MRI findings that were "essentially unchanged to possibly somewhat improved...from those obtained in October 2013." [AR 26.]

Updated records submitted after the ALJ's hearing were also examined. Dr. Rahn, who examined Harris on January 12, 2021, recommended only conservative management with injection therapy and a new course of physical therapy. [AR 26.] The ALJ noted that ultimately, Dr. Rahn "did not see anything urgent or different about the claimant's back condition from when he last saw him in the 2013 and 2014 timeframe." [AR 27.]

"In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. §404.1529(c); S.S.R. 96-7p, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562. The ALJ's rather exhaustive review of the medical history and other evidence, including Harris's own statements during medical treatment, his activities and work history, provides more than sufficient detail to support the credibility analysis.

The only particular subjective symptoms Harris references as being improperly discounted by the ALJ is his testimony that he quit his part-time job at Macy's in 2019 because the standing required, even with the intermittent sitting and standing his

supervisor allowed, resulted in so much pain that after work he could only lie in bed and do physical therapy stretches and exercises for the pain.  [DE 17 at 10, citing AR 69.] The ALJ's decision acknowledges that the Macy's job ended "due to onset of variable lower body pain resulting from prolonged standing and walking," and that "[t]hereafter, the claimant filed his claim for disability."  [AR 22.]  The ALJ did not express a conclusion that Harris had exaggerated his pain from the work at Macy's. Rather than discount Harris's testimony on this point, the ALJ, after her comprehensive review and analysis of Harris's history and circumstances, "accommodate[d] potential limitations in the workplace by assigning an option to alternate sitting and standing up to every 30 minutes, if needed."  [AR 27-28.]  Harris demonstrates no error by the ALJ.

Harris begins his assertion of credibility error by citing the ALJ's four mentions of Harris's brief work as a personal trainer during the period of claimed disability, referring to them as a "primary rhetorical hook of the ALJ opinion."  [DE 17 at 9.]  To the contrary, the mentions are merely passing and contextually appropriate.  And none of them is a linchpin of the ALJ's credibility analysis.  The first reference appears in the ALJ's consideration whether Harris has any severe mental impairments.  Harris's work as a personal trainer is included in a list of more than a dozen activities in support of her conclusion that Harris's "testimony and allegations also support no sustained or even mild mental health deficits in daily activities."  [AR 19.]

The second and third mentions occur in the ALJ's lengthy review of the medical record and other evidence relevant to Harris's physical strength and the condition of his back.  [AR 23, 25.]  There is no undue reliance or emphasis on Harris's work as a personal trainer.  The fourth mention is in the context of the ALJ's weighing of the State Agency medical consultants' RFC determination.  Harris's work as a personal trainer is referenced along with his other reports of regular exercise, the fact that he doesn't need an assistive device, various medical findings and opinions, and Harris's own reports of functional capacity.  [AR 27.]  The temporary work as a personal trainer plays no outsize or even definable role in the ALJ's analysis, and certainly is not an instance of using an attempt at work to discredit the claimant, as Harris suggests.  [DE 17 at 10.] Given its minor significance in the ALJ's determination, Harris's work as a personal trainer is more of a "primary rhetorical hook" of Harris's brief than of the ALJ's decision.

## Picking and Choosing

Next Harris argues that the ALJ erred by "picking and choosing." [DE 17 at 12.] He cites *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011), one of many decisions in which the Seventh Circuit has faulted ALJ's for "cherry-picking" from mixed medical reports to support the denial of benefits.  The brief could be clearer as to the particular issue Harris accuses the ALJ of evaluating unfairly.  Harris begins the argument by charging the ALJ with "minimiz[ing] the ongoing effects of the unacknowledged January

incident," without (ironically) any explanation of what incident he refers to.  [DE 17 at 12.]  My best interpretation of Harris's argument is that it concerns his "antalgic gait," what is commonly referred to as a limp.  Harris suggests (without citation to any pertinent authority) that a limp is a condition that commonly waxes and wanes, so that reports of improvement are not finally determinative of the condition's impact on Harris's function.  [DE 17 at 12.]

Harris's argument is undeveloped.  To present a cohesive "cherry-picking" argument, Harris must identify persuasive evidence contrary to the finding credited by the ALJ, but which the ALJ ignored.  In this case the ALJ's decision acknowledged several times that some medical evidence reflects that Harris suffered from an antalgic gait.  [AR 25 referring to February 2019 and October 2019 medical reports.]  Harris fails to demonstrate that the ALJ ignored all medical evidence of hip pain or dysfunction. She did not. She acknowledged that evidence, along with all the other evidence, and made the determination that despite his impairments Harris is capable of light work with some limitations.

I agree with the Commissioner that, under the cloak of a "cherry-picking" challenge, Harris is essentially asking  me to reweigh the evidence.  And in doing so, Harris is himself impermissibly "playing doctor" with the lay opinion that "[c]onditions involving back and leg interrelating pain like Plaintiff's commonly wax and wane."

[DE 17 at 12.]  No "cherry-picking" is shown to have occurred, and no basis for remand is demonstrated in the ALJ's handling of evidence that Harris has an antalgic gait.

## **Error in RFC Limitations**

Harris's final contention is that "[a]s per above arguments, RFC limitations above the sedentary level are simply not based on substantial evidence on the record."  [DE 17 at 13.]  The impetus for this contention is clear – Harris observes that a sedentary RFC would mean a finding of disability under the Medical Vocational Guidelines given his age and other factors.  [DE 17 at 13, citing 20 C.F.R. Part 404, subpart P, app. 2.]  There appears to be no new assertion of error by the ALJ, only Harris's conclusory claim that his previous arguments show that  the ALJ's RFC determination was not based on substantial evidence.  As I have found the previous arguments to be without merit, this derivative ground for relief is also rejected.

## **Conclusion**

The ALJ sufficiently articulated her findings and conclusions to permit meaningful judicial review, so a remand is not warranted for lack of explanation. Beyond that, my role is not to determine whether the plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Jarnutowski v. Kijakazi*, ___ F.4th ___, 2022 WL 4126293, at *3 (7th Cir. Sept. 12, 2022).  Applying these standards, I will affirm the denial of disability benefits.  In reviewing the ALJ's decision, I may not "reweigh the

evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [my] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).  After consideration of each of Harris's assertions of error, I conclude that substantial evidence supports the ALJ's determination that Harris is not disabled, and the ALJ's decision provides a logical bridge between the evidence and the result.  *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Carleton Leslie Harris's application for disability benefits and supplemental security income benefits is AFFIRMED.

The Clerk shall enter judgment in favor of the defendant Commissioner and against plaintiff Harris.

**SO ORDERED**.

ENTERED: September 20, 2022.

/s/ Philip P. Simon
**UNITED STATES DISTRICT JUDGE**